<span>
</span>
Judd B. Grossman, Esq.
Lindsay E. Hogan, Esq.
Matthew M. Marcucci, Esq.
**GROSSMAN LLP**
745 Fifth Avenue – 5th Floor
New York, New York  10151
Telephone:  (646) 770-7445
Facsimile:  (646) 417-7997
jgrossman@grossmanllp.com
lhogan@grossmanllp.com
mmarcucci@grossmanllp.com

*Attorneys for Plaintiff Abbott Laboratories*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ABBOTT LABORATORIES,<br><br>　　　　　　　　Plaintiff,<br><br>　　-against-<br><br>CAROL FEINBERG,<br><br>　　　　　　　　Defendant. | Case No.<br><br>**COMPLAINT** |

Abbott Laboratories ("Abbott"), by and through its undersigned attorneys, for its Complaint against Carol Feinberg, states as follows:

### NATURE OF THE ACTION

1.　　This case concerns an oil painting (the "Work") located in New York that was stolen from Abbott years ago.

2.　　Abbott bought the Work in 1960 as part of its corporate art collection, and its ownership of the Work is documented in both internal and publicly-available records, including

exhibition catalogues, photographs, and the draft catalogue-raisonné files of a prominent art historian.

3. Abbott only recently learned, after an insurance valuation resulted in the discovery of discrepancies, that the Work was stolen and had been surreptitiously replaced with a skilled forgery. After further testing and analysis, a leading forensic expert recently determined that the painting in Abbott's possession was not the same Work originally acquired in 1960, but rather it was a deliberate fake.

4. Defendant, a longtime New Yorker, claims that she purchased the Work in 1993 from a New York art gallery. According to the gallery's principals, who still live and work in New York, the Work's provenance going back to the artist's estate included only New York collections, including a New York corporation whose sole principal was and still is a New York resident. Indeed, the provenance information provided to Defendant at the time of sale did not include Abbott, nor for that matter anyone located outside New York.

5. After recently discovering the theft, Abbott promptly contacted law-enforcement authorities, who eventually located the Work in Defendant's Manhattan apartment. Defendant refused to allow the authorities to disclose her identity to Abbott, however, forcing Abbott to spend many additional months investigating the Work's whereabouts. Abbott finally independently identified Defendant, but despite Abbott's repeated requests, she has not returned the Work.

6. Plaintiff has filed this replevin action seeking the return of the Work.

**PARTIES, JURISDICTION, AND VENUE**

7. Plaintiff Abbott Laboratories is a corporation organized under the laws of the state of Illinois, with its headquarters in Abbott Park, Illinois.

8. Defendant Carol Feinberg is a 90-year-old domiciliary of New York, New York.

9. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332, due to the complete diversity of the parties and because the amount in controversy exceeds $75,000.

10. This Court has personal jurisdiction over Defendant because she is a longtime domiciliary of New York, New York.

11. Venue is proper in this District under 28 U.S.C. § 1391 because Defendant resides here, a substantial part of the events giving rise to Plaintiff's claims occurred here, and the property that is the subject of the action is located here.

## FACTUAL ALLEGATIONS

### A. Abbott's Long History of Patronage of the Arts.

12. Abbott has a long history of patronage of the arts. For example, during World War II, Abbott worked with the federal government to sponsor the work of "combat artists," resulting in a powerful collection of paintings documenting the war. Those works were eventually donated to the various branches of the armed services.

13. At the same time that Abbott was involved in the war effort abroad, here at home Abbott was acquiring a corporate collection of fine artworks, which have long decorated, and still decorate, the halls of Abbott's headquarters.

14. Abbott also makes its collection available for public enjoyment by loaning its works to museums and other institutions throughout the country.

### B. Abbott Acquires the Work.

15. Abbott purchased the Work in 1960 from a New York City art dealer.

16. Abbott's ownership of the Work is documented and has been a matter of public record throughout the 58 years since its acquisition. For example, shortly after acquiring the

Work, Abbott loaned it to a museum on the west coast. The catalogue for that exhibition lists the Work as "Lent from Collection of Abbott Laboratories."

17. Abbott also published an image of the Work in its in-house magazine, along with an essay about the Work authored by a New York City-based art critic.

18. Beginning in the 1960s, Abbott, in cooperation with the American Federation for the Arts—a New York City-based non-profit organization—arranged for a portion of Abbott's collection, including the Work, to circulate around the country as part of a traveling exhibition.

19. The exhibition received extensive press coverage, and the Work is clearly visible hanging on the wall in a photograph of the exhibition. An image of the Work was also published in catalogues produced to accompany the exhibition.

20. Independent of these records, Abbott's ownership of the Work is documented in a draft catalogue raisonné of the artist's works.[1] Upon information and belief, this draft catalogue raisonné, prepared by a New York City-based art historian, is considered an important source of information about the artist's oeuvre, and the historian's files have been publicly available for decades. Those files include an entry regarding the Work, including a notation indicating that the owner is "Abbot [sic] Lab."

21. Since purchasing the Work, Abbott has never sold, gifted, or otherwise transferred title of the Work to anyone.

**C.     Abbott Learns That the Work Was Stolen and Replaced With a Forgery.**

22. In early 2016, after Abbott retained the services of an expert appraiser to reassess and update the valuation of the works in its collection for insurance purposes, the first ever

---

[1] A catalogue raisonné is "an annotated, illustrated comprehensive listing of the artist's work." *Thome v. Calder Found.*, 70 A.D.3d 88, 94, 890 N.Y.S.2d 16, 20 (1st Dep't 2009).

4

concerns were raised regarding the authenticity of the version of the Work then in Abbott's possession.

23. Abbott promptly delivered that painting to a company specializing in forensic analysis of artworks (the "Forensic Expert").

24. In March 2016, the Forensic Expert issued a report concluding, for the first time, that Abbott was in possession of a deliberate forgery of the Work.  Additionally, based on Abbott's archival photographs, the Forensic Expert determined that the painting it had examined was different than the Work that Abbott had originally acquired.

25. In other words, Abbott no longer possessed the Work it bought in 1960; the Work had been stolen and replaced with a fake.

26. Although Abbott does not know when or how the Work was stolen, upon information and belief it is possible that the theft occurred (and the Work was replaced with the forgery) in 1987, when the Work was delivered offsite to a vendor for cleaning.

**D.    Abbott Alerts the Authorities and Investigates the Whereabouts of the Work.**

27. Upon receiving the March 2016 report identifying the forgery of the Work, Abbott contacted the Lake County State's Attorney's Office (the "LCSAO"), who opened a grand-jury investigation.

28. At all times, Abbott cooperated fully with the grand-jury investigation.  At the same time, Abbott retained art experts to assist with additional research to help locate the real, authentic Work.

29. Through these efforts, after a year of investigation, Abbott learned that the Work—unbeknownst to Abbott at the time—had been briefly exhibited in a 2003 exhibition (the "Museum Exhibition") at a small New England museum (the "New England Museum").

30. Abbott also learned that the Work—again, without Abbott's knowledge—had been briefly exhibited in a 2003 exhibition (the "Gallery Exhibition") at a Manhattan art gallery (the "Manhattan Gallery").

31. In both exhibitions, however, the Work had been displayed, and documented in accompanying catalogues, *under an entirely different title* than the title by which the Work had been known when it was in Abbott's collection.

32. In the catalogue accompanying the Museum Exhibition, the owner was listed as "Private Collection Courtesy of [the Manhattan Gallery]." Abbott's consultant confirmed that this gallery was the same Manhattan Gallery that had exhibited the Work in the Gallery Exhibition. Similarly, the catalogue accompanying the Gallery Exhibition only listed the Work as coming from a "Private Collection."

33. The LCSAO eventually determined through the grand-jury proceedings that the "Private Collection" referred to in those catalogues belonged to Defendant Carol Feinberg and her late husband (who passed away in 2002).

**D. Defendant Conceals Her Identity from Abbott; Defendant Refuses to Return the Work to Abbott.**

34. On information and belief, after the LCSAO contacted Defendant in or around January 2018 concerning Abbott's claim that the Work had been stolen, Defendant began a campaign to hide her family's identity and the location of the Work, even resisting the requests of law enforcement to speak directly with Abbott's representatives.

35. On information and belief, Despite the LCSAO's requests over the ensuing months, Defendant refused to permit the LCSAO to share her identity or the whereabouts of the Work with Abbott.

36. On information and belief, Defendant also instructed the New England Museum where she had exhibited the Work in 2003 not to disclose her identity to Abbott.

### F. The Work Changed Hands Several Times in New York After It was Stolen.

37. Defendant purportedly purchased the Work in 1993 from the Manhattan Gallery. Although the Manhattan Gallery is now defunct, its former owners still live in New York, where they have retained records relating to the Work, including the alleged sale to Defendant.

38. That Manhattan Gallery, in turn, purported to have bought the Work several years earlier from a New York corporation. That corporation's sole principal is an individual who, upon information and belief, at all relevant times has resided in New York, and has operated a place of business in Manhattan. This individual formed the corporation in 1987—the same year that the theft may have occurred—apparently specifically for purposes of acquiring this Work.

39. In other words, upon information and belief, every person or entity claiming to have owned the Work since the Work was stolen from Abbott has been based in New York, where they also maintain records relating to the Work and their alleged ownership. But none has agreed to voluntarily share with Abbott further information concerning the Work.

### G. Abbott Agrees to Delay Filing Suit to Pursue an Amicable Resolution.

40. Through its own investigation, in or about June of this year Abbott confirmed Defendant's identity and the whereabouts of the Work. Defendant has admitted that the Work has been displayed in her Manhattan home for more than 25 years.

41. Abbott spent the next several months working with Defendant's representatives, including outside counsel and her son ("Mr. Feinberg"), the co-founder of a prominent corporate law firm in Boston, to try to amicably resolve this dispute.

7

42. Prior to meeting, at Abbott's insistence, Defendant's New York counsel agreed in writing that the parties would "exchange information on our respective clients[] and their competing title claims on an "attorneys' eyes only" basis."

43. Through counsel, the parties subsequently conducted several in-person meetings in New York where Abbott shared confidential information, including internal Abbott records, documenting Abbott's long-standing ownership of the Work.

44. Based on the information provided, Defendant suggested that further meetings could be productive, and eventually Mr. Feinberg invited Abbott's New York counsel to meet on September 6 at his Boston offices to discuss settlement. Based on these representations, Abbott held off on commencing this litigation.

45. Just several days before that scheduled in-person meeting, Defendant filed an anticipatory declaratory-judgment action in the United States District Court for the Northern District of Illinois, Eastern Division. *See* Case No. 1:18-cv-06000 (hereinafter, the "Illinois Action"). Upon information and belief, the complaint in the Illinois Action includes information that Defendant learned from the LCSAO in connection with its grand-jury investigation, and/or information obtained during the course of confidential settlement discussions with Abbott's representatives.

46. Concurrently with the filing of this action, Abbott is filing a motion in the Illinois Action seeking to dismiss or stay the Illinois Action in favor of this one, or in the alternative, to transfer the Illinois Action to this Court.

47. Abbott now brings this action to recover the Work and to obtain a declaration that it is the rightful owner of the Work.

## FIRST CAUSE OF ACTION
### Replevin

48. Abbott repeats and realleges all the foregoing allegations as if fully set forth herein.

49. Abbott has title to and a possessory right and interest in the Work.

50. Abbott's right in and title to the Work is superior to any such purported rights asserted by Defendant.

51. Defendant is in possession of the Work in New York.

52. Abbott demanded that Defendant return the Work, beginning in or about June 2018. To date, Defendant has refused to return the Work to Abbott despite its demands.

53. Accordingly, Defendant is liable to Abbott for replevin and is required to return the Work to Abbott forthwith.

## SECOND CAUSE OF ACTION
### Declaratory Judgment Under 28 U.S.C. §§ 2201 and 2202

54. Abbott repeats and realleges all the foregoing allegations as if fully set forth herein.

55. Under 28 U.S.C. § 2201, this Court has authority to decide actual controversies within its jurisdiction.

56. A justiciable controversy exists between Abbott, on the one hand, and Defendant, on the other hand, as to which of them has good title to the Work.

57. Abbott purchased the Work in 1960 for good and valuable consideration and has never sold, gifted, or otherwise transferred title to the Work to anyone.

58. The Work was in Abbott's possession for many years until it was wrongfully taken from Abbott, and the original Work was replaced with a forgery.

59. The Work has been for decades, and is now, in New York, in the possession of Defendant, who has refused to return it to Abbott notwithstanding Abbott's requests.

60. Declaratory relief from this Court will resolve this controversy.

61. As alleged herein, a real, substantial and immediate controversy is presented regarding title to and right to possession of the Work, and Abbott hereby seeks a declaratory judgment under 28 U.S.C. § 2201, *et seq.*, and Rule 57 of the Federal Rules of Civil Procedure declaring that it is the rightful owner of the Work and has a right to immediately possess it.

## PRAYER FOR RELIEF

**WHEREFORE**, Abbott demands judgment as follows:

1. On its first claim, the return of the Work to Abbott;

2. On its second claim, a declaration that Abbott has good, marketable title to the Work, free and clear from any claims; and

3. Awarding Abbott such other or further relief as the Court deems just and proper.

Dated: September 17, 2018
New York, New York

By: _____
Judd B. Grossman, Esq.
GROSSMAN LLP
745 Fifth Avenue, 5th Floor
New York, New York 10151
Telephone: (646) 770-7445
Facsimile: (646) 417-7997
jgrossman@grossmanllp.com

*Attorneys for Plaintiff Abbott Laboratories*